STATE OF NORTH CAROLINA v. VICTOR KENNETH HOLSTON AKA ROBERT VERNON YOUNG

No. COA98-987

(Filed 17 August 1999)

1. **Evidence— impeachment—prior violent conduct—specific instance—probative of truthfulness**

     The trial court did not err in a first-degree murder case by denying defendant's right to cross-examine a State's witness with regard to that witness' prior violent conduct because a specific instance of violent conduct is not admissible for impeachment purposes unless it is probative of truthfulness.

2. **Constitutional Law— right to be present at all stages— unwillingness to come into courtroom—jury recess—not a trial proceeding**

     The trial court did not violate defendant's right to be present at all stages of his capital trial when it discussed with defendant's attorney and the State, in defendant's absence, his unwillingness to come into the courtroom because the jury was in recess at the time of the alleged violation and the conversation concerning his presence in the courtroom was not in the nature of a "trial proceeding."

STATE v. HOLSTON

[134 N.C. App. 599 (1999)]

### 3. Evidence— expert—exclusion of conversations with defendant—harmless error—substantially the same

The trial court did not err in a first-degree murder case by refusing to allow defendant's expert to relate the content of his conversations with defendant, after conducting a voir dire, on the grounds that the probative value of such testimony was outweighed by its confusion because any error was harmless in light of the fact that the information was substantially the same evidence presented to the jury through the expert's other answers.

### 4. Evidence— work product—privilege waived

The trial court did not err in requiring defendant's attorney to produce to the State his notes summarizing defendant's previous medical records, after conducting a voir dire, because even if those notes constitute work product, the privilege was waived when defendant's attorney provided those same notes to an expert who relied on them for his testimony.

### 5. Evidence— impeachment—prior conviction—more than ten years ago—credibility—more probative than prejudicial

The trial court did not err in a first-degree murder case by allowing the State to impeach defendant with a prior conviction for attempted robbery that occurred more than ten years ago because defendant's credibility was central to the resolution of this case and his prior conviction was more probative than prejudicial. N.C.G.S. § 8C-1, Rule 609(b).

Appeal by defendant from judgment filed 10 February 1997 by Judge Judson D. DeRamus, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 18 May 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Jill Ledford Cheek, for the State.*

*W. David Lloyd for defendant-appellant.*

GREENE, Judge.

Victor Holston (Defendant) appeals from a jury conviction of first-degree murder.

The evidence at trial tended to show that in the months leading up to 15 May 1993 Defendant and Pierre Brown (Brown), the victim

**STATE v. HOLSTON**

[134 N.C. App. 599 (1999)]

in this case, lived together and had a drug dealing partnership. Prior to 15 May 1993, their relationship had gone "sour." On the day in question, Brown showed up at their house with four other friends. Defendant testified that, "he was afraid because he knew [he] was going to die or be hurt real bad because Brown had told him to get out of the house, and he had not moved out." After an initial conversation, Brown and Defendant walked alone to the street. Defendant then shot Brown five times and claims the shooting was in self defense.

At trial, the State contended Defendant acted with premeditation and deliberation when he shot Brown. The State called the victim's best friend, who was present on 15 May 1993, to testify against Defendant. Defendant, in his effort to impeach the witness on cross-examination, attempted to present evidence that the witness had on at least one occasion shot at other individuals in a drug turf dispute while acting as the victim's enforcer. The State objected and the trial court sustained the objection.

One morning during the middle of trial, but before the jury had been seated after an overnight recess, the trial judge informed Defendant's attorney and the State that Defendant was refusing to cooperate in being transported from the jail to the courthouse; that he had refused to get dressed; had advised jail personnel that if he did come to court, he would disrupt the proceedings; and that while feigning sickness, had refused to allow nurses to examine him. The trial court advised counsel that it could not go forward without Defendant's presence and that Defendant, while having the ability to stand trial, did not have the inclination. The trial court ordered the bailiffs to bring Defendant to the courtroom using as little force as necessary. Later, Defendant entered the courtroom and the trial resumed.

After the State rested, Defendant presented psychiatrist Dr. Billy Royal (Dr. Royal) as an expert witness. Earlier, Dr. Royal had conducted a series of interviews with Defendant in order to determine if he had a mental illness. Prior to his testimony, however, the State requested the trial court preclude Dr. Royal from relating to the jury any statements made by Defendant to him. The trial court ruled that it would conduct a *voir dire* at the conclusion of Dr. Royal's testimony and, at that time, determine whether any of Defendant's statements to Dr. Royal would be admissible. Until that time, Dr. Royal would be precluded from testifying as to any statements made to him by Defendant.

Dr. Royal testified that based on several interviews with Defendant, he diagnosed Defendant as suffering from a "paranoid personality disorder." This illness, Dr. Royal concluded, could have prevented Defendant from acting with premeditation and deliberation on 15 May 1993. His mental illness, Dr. Royal opined, caused Defendant to misinterpret the acts of others as threatening.

The trial court sustained all objections to questions soliciting Defendant's statements to Dr. Royal made during the interviews. Dr. Royal did explain, in general terms, that Defendant's behavior, as observed in these interviews, was very mistrustful and uncooperative. Additionally, he testified that the way Defendant talked about himself and the way he perceived others was consistent with the pathology of a "paranoid personality disorder." Dr. Royal, for example, stated Defendant was unwilling to cooperate with Dr. Royal because he had a "fear that [his answers would be] used against him," he "did not trust [Royal]," he "felt that he had to be eternally vigilant in terms of surviving," and he "was very concerned about what [Royal] was about and [Royal] had to use all [his] skills to get him to talk."

At the end of cross-examination and in the absence of the jury, *voir dire* was conducted with respect to specific comments Defendant had made to Dr. Royal. Defendant's attorney summarized for the trial court what Dr. Royal would have told the jury had he been allowed to testify. This summary revealed that Defendant: (1) refused to answer any of Dr. Royal's questions because Dr. Royal would be able to "see into his mind" and think that he was crazy; (2) did not want a psychiatric defense of any kind; (3) thought his attorneys and Dr. Royal were collaborating with the State; and (4) covered up his true feelings about things because he did not want people to see inside the shell of a person and was basically willing to take whatever comes in life to prevent that. Dr. Royal took the stand and testified there were no other direct statements Defendant made to him, in addition to those related by Defendant's attorney, which formed the basis of his opinion.

Following *voir dire*, the trial court ruled "that [while] such comments were probative of showing how Dr. Royal formed the basis of his opinions as to those matters of mental state at the time in question . . . they would be outweighed . . . [by] the confusion that would result from putting [Defendant's statements] in through [Dr. Royal]." Thus, the trial court refused to allow Defendant to present his statements to Dr. Royal into evidence.

**STATE v. HOLSTON**

[134 N.C. App. 599 (1999)]

In addition to the above-mentioned interviews with Defendant, Dr. Royal testified he also had relied on Defendant's attorney's oral summary to him of another psychologist's evaluation in forming his opinion that Defendant suffered from a paranoid personality disorder. Before Dr. Royal took the stand, Defendant's attorney provided him with a handwritten summary of this evaluation, which summary had been prepared by Defendant's attorney after the attorney had reviewed Defendant's medical records, including a report from another psychologist. After an in-camera hearing, the trial court found as a fact that Dr. Royal had relied on these notes in his testimony and the State was entitled, over Defendant's objections, to be provided a copy of the notes.

After Defendant's psychiatrist testified, Defendant testified in support of his claim of self-defense. Previously, the State gave written notice that it intended to impeach Defendant, if Defendant took the stand, with a 1981 conviction for second-degree attempted robbery in New York. Defendant objected and contended that he had been paroled in January of 1984 for that offense, and thus impeachment was barred under Rule 609 of the North Carolina Rules of Evidence. After conducting a *voir dire* and hearing extensive argument, as reflected in fifteen pages of the transcript, the trial court ruled that "the credibility of the Defendant would be central to his defense of self-defense . . . the court has weighed the probative value with respect to credibility against any prejudicial effect . . . and does find the evidence [of the 1981 conviction] should be admissible under 609, in the interests of justice."

On his cross-examination, Defendant was asked about, and admitted he pleaded guilty to, the 1981 conviction for attempted robbery in the second degree in New York, for which he received a sentence of eighteen to fifty-four months. He also admitted that he had again pleaded guilty in 1985 to second-degree attempted robbery, for which he was sentenced to six years to life, and for which he was released on parole in 1992.

The issues are whether: (I) it was error not to allow Defendant to impeach the State's witness with questions about the prior violent activity of that witness; (II) it was error for the trial court to discuss with trial counsel, in the absence of Defendant, administrative matters involving Defendant's refusal to cooperate; (III) it was error to prevent Dr. Royal from relating the statements made by Defendant to him and used by him to form the basis of his expert opinion of

Defendant's mental state at the time of the homicide; (IV) the State can call upon the court's compulsory process for the production of portions of Defendant's attorney's work product where those notes were given to the expert witness and relied on by that witness in his trial testimony; and (V) it was error under Rule 609 to allow into evidence Defendant's prior conviction for attempted robbery when Defendant was released from time served for that conviction more than ten years before the start of the 1997 trial.

I

**[1]** Defendant contends the trial court erred in denying him the right to cross-examine a State's witness with regard to that witness's prior violent conduct. We disagree.

Under Rule 608(b), evidence of a specific instance of conduct is not admissible for impeachment purposes unless it "is in fact probative of truthfulness." *State v. Lamb*, 321 N.C. 633, 647, 365 S.E.2d 600, 607 (1988); *see* N.C.G.S. § 8C-1, Rule 608(b) (1992). Evidence of specific instances of violent conduct of a party against others is irrelevant to the question of a person's truthfulness. *Lamb*, 321 N.C. at 647, 365 S.E.2d at 607. Because the testimony Defendant sought to elicit in this case related to instances of violence of the witness, the trial court properly sustained the State's objections.

II

**[2]** Defendant argues his unwaivable right to be present at all stages of his capital trial was violated when the trial court discussed in his absence, with Defendant's attorney and the State, his unwillingness to come into the courtroom. We disagree.

As a general proposition, a defendant is entitled to be present "at each and every stage of trial." *State v. Buchanan*, 330 N.C. 202, 215, 410 S.E.2d 832, 840 (1991). A time of jury recess is not considered a stage of the trial, unless during that recess some "trial proceedings" are conducted. *Id.* at 217, 410 S.E.2d at 841. In this case, the jury was in recess at the time of the alleged violation and the conversation concerning Defendant's presence in the courtroom was not in the nature of a "trial proceeding." Accordingly, Defendant's constitutional rights were not violated.

III

**[3]** As a general proposition, an expert, who is qualified to offer his findings and diagnosis of a defendant, also must be permitted

to testify "as to the content of the conversations with [a] defendant in order to show the basis for his diagnosis." *State v. Ward*, 338 N.C. 64, 106, 449 S.E.2d 709, 732 (1994), *cert. denied*, 514 U.S. 1134, 131 L. Ed. 2d 1013 (1995); *see* N.C.G.S. § 8C-1, Rule 803(4) (1992); *cf.* N.C.G.S. § 8C-1, Rule 705 (1992). "The [trial] court [, however,] should . . . exercise care in the manner in which such testimony is elicited, so that the jury may understand that the case history does not constitute factual evidence, unless corroborated by other competent evidence." *Ward*, 338 N.C. at 106, 449 S.E.2d at 732. Furthermore, the testimony must be consistent with "the rules of competency, relevancy and materiality," *McClain v. Otis Elevator Co.*, 106 N.C. App. 45, 49, 415 S.E.2d 78, 80 (1992); *State v. Baldwin*, 330 N.C. 446, 457, 412 S.E.2d 31, 38 (1992) (if "content of the conversations" is not "reasonably necessary" for an explanation of the basis of the expert's conclusions, then trial court is justified in excluding the evidence as not relevant), and its probate value must not be outweighed by its prejudicial value, *Baldwin*, 330 N.C. at 456; 412 S.E.2d at 37; N.C.G.S. § 8C-1, Rule 403 (1992).

In this case, the trial court refused to allow Dr. Royal, Defendant's expert, to relate the content of his conversations with Defendant on the grounds that the probative value of such testimony was outweighed by "the confusion that would result from putting [Defendant's statements] in through [Dr. Royal]." We can reverse that ruling only upon a showing that it "was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Penley*, 318 N.C. 30, 41, 347 S.E.2d 783, 789 (1986). Assuming, without deciding, the trial court did abuse its discretion, any error was harmless, as substantially the same information as that contained in the excluded testimony was presented to the jury in answers given by Dr. Royal to other questions. *See Ward*, 338 N.C. at 106, 449 S.E.2d at 732. Although the admitted evidence is somewhat different from the excluded statements of Defendant, the differences are not material and Defendant has not met his burden of showing there is a reasonable possibility a different result would have been reached had the excluded evidence been admitted. *See* N.C.G.S. § 15A-1443(a) (1997).

IV

**[4]** Work product is a qualified privilege for certain materials prepared by an attorney acting on behalf of his client in anticipation of litigation. *State v. Hardy*, 293 N.C. 105, 126, 235 S.E.2d 828, 840-41 (1977). The doctrine applies in criminal as well as civil cases. *Id.*

Assuming, without deciding, Defendant's attorney's summary of Defendant's previous medical records constitutes work product, the privilege was waived in this case. *Id.* (work product privilege can be waived). The waiver occurred when Defendant's attorney provided Dr. Royal, prior to Dr. Royal's testimony, the very notes he now contends should be shielded from discovery and Dr. Royal relied on those notes in his testimony. *See id.* (State waived privilege when it called witness and witness made use of work product in his testimony).

## V

**[5]** Rule 609 allows a defendant's prior convictions to be offered into evidence when he takes the stand and thereby places his credibility at issue. *State v. Chandler*, 100 N.C. App. 706, 710, 398 S.E.2d 337, 339 (1990); N.C.G.S. § 8C-1, Rule 609(a) (1992). Evidence of a conviction is not admissible, however, if more than "10 years has elapsed since the date of the conviction or of the release of the witness from the confinement." N.C.G.S. § 8C-1, Rule 609(b) (1992). Nonetheless, a conviction that is outside this ten-year rule is admitted properly if the trial court makes "findings as to the specific facts and circumstances which demonstrate the probative value [substantially] outweighs the prejudicial effect" of the evidence.[1] *State v. Hensley*, 77 N.C. App. 192, 195, 334 S.E.2d 783, 785 (1985), *disc. review denied*, 315 N.C. 393, 338 S.E.2d 882 (1986); *see* N.C.G.S. § 8C-1, Rule 609(b). Some factors properly considered by the trial court in determining if a conviction over ten years old should be admitted include: the impeachment value of the prior crime(s); the remoteness of the prior crime(s); and the centrality of the defendant's credibility. 4 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 609.04[2][a] (2d ed. 1999).

In this case, the trial court conducted an extensive hearing on the Rule 609(b) motion and entered findings of fact revealing that it believed the credibility of Defendant's testimony was central to the resolution of this case and that evidence of the 1981 conviction was therefore more probative than prejudicial. Although the findings are minimal, we believe they are legally sufficient in this case, as they indicate the trial court exercised meaningful discretion in weighing the probative value of the 1981 conviction against its prejudicial effect. Furthermore, Defendant's credibility was central to the resolution of this case. He testified he acted in self defense and this testi-

---

1. There is a rebuttable presumption that "prior convictions more than ten years old tend to be more prejudicial to a defendant's defense than probative of his general character for truthfulness." *State v. Ross*, 329 N.C. 108, 119, 405 S.E.2d 158, 164 (1991).

mony was in direct contradiction to all the evidence offered by the State. The evidence of the 1981 conviction for attempted robbery was a factor properly presented to the jury for their consideration in evaluating Defendant's credibility.[2] *See State v. Lynch*, 337 N.C. 415, 420, 445 S.E.2d 581, 583 (1994) (robbery is a crime of dishonesty and a prior conviction is admissible under Rule 609(b)).

No Error.

Judges WYNN and MARTIN concur.

———

2. Even assuming the trial court erred in admitting the 1981 attempted robbery conviction, Defendant has not met his burden of showing there is a reasonable possibility the jury would have reached a different result had this evidence not been admitted. N.C.G.S. § 15A-1443(a) (1997).