STATE OF NORTH CAROLINA v. KAHER MARUF MUHAMMAD

No. COA06-1430

(Filed 16 October 2007)

**1. Appeal and Error— presentation of issues—no argument below—grounds for motion to dismiss**

Defendant did not preserve for appellate review specific grounds not argued to the trial court on a motion to dismiss a first-degree murder charge.

**2. Criminal Law— pretrial detention hearing—terrorist watch list**

The prosecutor did not violate defendant's right to a fair trial in a first-degree murder prosecution when he explained during a pre-trial detention hearing that defendant was not the person with a similar name on the National Terrorist Watch List. N.C.G.S. § 15A-954(a)(4).

**3. Constitutional Law— right to remain silent—pre-trial exercise—admissible**

There was no plain error in a first-degree murder prosecution in the admission of defendant's pre-trial exercise of his right to remain silent. The evidence served to explain the context of statements made by defendant after he was advised of his rights, the State did not make any prejudicial comment implying or inviting assumptions from defendant's silence, and defendant did not show that a fundamental error was committed or that the error (assuming there was one) changed the outcome.

STATE v. MUHAMMAD

[186 N.C. App. 355 (2007)]

**4. Evidence— murder victim's faith—photograph of victim—personal effects—admission not plain error**

There was no plain error in a first-degree murder prosecution in the admission of evidence of the victim's faith, a photograph of her when alive, and her bloody eyeglasses and other personal effects.

**5. Criminal Law— instructions on accident denied—no error**

Any error in denying a first-degree murder defendant's request for a jury instruction on the defense of accident was harmless. The jury received instructions on possible lesser included offenses and found that all of the elements of first-degree murder were met.

**6. Criminal Law— instruction on voluntary intoxication denied—deliberation and premeditation**

The trial court did not err in a first-degree murder prosecution by denying the defendant's request for an instruction on the defense of diminished capacity by voluntary intoxication. There was no evidence suggesting that defendant was incapable of forming a deliberate and premeditated purpose to kill.

**7. Homicide— first-degree murder—short-form indictment**

A short-form indictment was sufficient to allege first-degree murder.

**8. Evidence— prior conviction—more than ten years old—admission not plain error**

There was no plain error (defendant made a motion in limine but failed to objection at trial) in a first-degree murder prosecution in the admission of evidence of a prior conviction that was more than ten years old.

Appeal by defendant from judgment entered 31 March 2006 by Judge John R. Jolly, Jr. in Martin County Superior Court. Heard in the Court of Appeals 20 August 2007.

*Roy Cooper, Attorney General, by Diane A. Reeves, Special Deputy Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

STATE v. MUHAMMAD

[186 N.C. App. 355 (2007)]

MARTIN, Chief Judge.

Defendant appeals from a judgment entered upon a jury verdict finding him guilty of the first degree murder of Shelby Tripp Leggett. At trial, the evidence tended to show that defendant was a close friend of Amy Jo Nicholson and spent a great deal of time at her home. Amy Nicholson's teenage daughter, Rebecca Nicholson, and Rebecca's daughter also lived in Amy Nicholson's house. Defendant was very protective of Rebecca. Rebecca's boyfriend, and the father of her child, was Troy Edwards. Edwards had a criminal history and admittedly used crack cocaine.

On the night of 8 February 2005, Edwards' grandmother, Shelby Leggett, was driving Rebecca and Edwards to Amy Nicholson's house to leave the baby with Amy and pick up some clothes for Rebecca. When they arrived, defendant was outside drinking. He tried to get Rebecca to speak to him, but she would not. Rebecca got in the back of the car with Edwards, with Leggett driving. Defendant followed them in his car as they left.

Defendant made a series of twenty telephone calls to Rebecca's cell phone, which she was carrying. According to defendant's own testimony, he was enraged at the time and wanted to get Rebecca away from Edwards. In one call, defendant said "you need to F-ing call me back right now. Don't make me kill nobody, all right. Don't f[—]ing make me kill nobody. In a minute I'm going to go inside and shoot somebody. Call me." In another message, defendant said "I'm going to F-ing kill everybody in a minute. You need to answer the G D phone or call me back or do something. I'm going to get that bitch out in the ditch in a minute." While defendant was following the others in his car, he repeatedly came very close to Leggett's car. When they reached the intersection with Highway 125, defendant ran the stop sign, passed them, changed direction in the road, and made his tires screech, so that Leggett almost hit him. Then Leggett pulled to the side of the road, and defendant pulled up beside her car. He got out of his car holding a pistol. As he approached Leggett's window, he said "I don't have a problem with you yet." The pistol discharged within a foot or two of Leggett's face, and she was killed by the bullet. Defendant then drove back to Amy Nicholson's residence.

According to defendant's own testimony, he got out of his car with his gun in hand and walked toward Leggett's car. He wanted Rebecca to get out of the car and wanted Edwards to see the gun, which defendant thought was empty. Defendant testified that as he

walked toward the driver's side window, he stumbled, caught himself by placing his hand on the car roof, and the gun fired.

The jury found defendant guilty of first degree murder on the basis of premeditation with deliberation and felony murder. Defendant appeals his conviction.

[1] Defendant raises seven issues on appeal. He first contends the trial court erroneously denied his motion to dismiss under N.C.G.S. § 15A-954(a)(4), which requires dismissal of a claim when "[t]he defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." N.C. Gen. Stat. § 15A-954(a)(4) (2005). In his brief, defendant argues four allegedly flagrant violations causing irreparable prejudice: (1) that the prosecutor made statements about defendant's possible presence on the National Terrorist Watch List; (2) that the Clerk of Court refused to approve defendant's documentation of citizenship; (3) that the trial court revoked defendant's bail *ex parte*; and (4) that the trial court refused to determine the conditions of pre-trial release. Of these assertions, only the statements about the National Terror Watch List were raised in defendant's motion. "[W]here a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (internal quotation marks omitted). Since these specific grounds were not argued in defendant's motion to the trial court, they are not preserved for appellate review. *See* N.C. R. App. P. 10(b)(1) (2006).

[2] As for defendant's argument that the prosecutor improperly made statements about defendant's possible presence on the National Terrorist Watch List, in violation of N.C.G.S. § 15A-954(a)(4), defendant fails to cite any dispositive authority in support of his contention. Defendant alleges that the prosecutor violated defendant's right to a fair trial, as embodied in *State v. Jones*, 355 N.C. 117, 132, 558 S.E.2d 97, 107 (2002), when the prosecutor explained to the trial judge during a pre-trial detention hearing that a name similar to the defendant's with defendant's date of birth appeared on the National Terrorist Watch List and the prosecutor's office followed up on the hit and determined it was not the defendant. However, *Jones* concerns the issue of prejudicial statements made to a jury during closing arguments, *id.*; hence, it is not determinative of the issue raised by de-

fendant in this case. Defendant does not cite any other authority demonstrating a violation of defendant's constitutional rights; therefore, this assignment of error is overruled.

[3] Defendant next contends that the trial court erroneously admitted evidence of his pre-trial exercise of his right to remain silent in violation of the Fifth Amendment to the U.S. Constitution. Defendant notes "a defendant's exercise of his constitutionally protected right[] to remain silent . . . during interrogation may not be used against him at trial." *State v. Elmore*, 337 N.C. 789, 792, 448 S.E.2d 501, 502 (1994). Thus, defendant argues that the court's admission into evidence of a signed waiver of rights form indicating that defendant did not want to speak with police officers, as well as testimony about the circumstances of his exercising his *Miranda* rights, is constitutional error entitling him to a new trial. "[S]uch a constitutional error will not warrant a new trial where it was harmless beyond a reasonable doubt." *Elmore*, 337 N.C. at 792, 448 S.E.2d at 502. In the instant case, however, defendant did not object to the testimony or the introduction of the *Miranda* form; therefore, defendant must show plain error. "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' . . . ." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (alteration in original) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). Assuming *arguendo* that the court erred in admitting the evidence that defendant exercised his right to remain silent, defendant has not shown that a fundamental error was committed or that the result of his trial would probably have been different had the error not occurred. The admitted evidence served to explain the context of statements that were made by defendant after he was advised of his rights. The State did not make any prejudicial comment implying or inviting assumptions from defendant's silence. Therefore, this assignment of error is overruled.

[4] By his next argument, defendant contends the trial court erred in admitting irrelevant and inadmissible evidence about the victim's good character. Among the evidence that defendant identifies as inadmissible are: (1) testimony evidencing the victim's Christian faith; (2) a photograph of the victim when she was alive; and (3) the victim's bloody eyeglasses and other personal effects. Because defendant did not object to this evidence at trial, defendant must show plain error.

N.C.G.S. § 8C-1, Rule 401, defines evidence as "relevant" when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2005). Generally, relevant evidence is admissible. N.C. Gen. Stat. § 8C-1, Rule 402 (2005). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2005). "[E]ven though a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991).

Defendant argues that "[e]vidence of the general good character of the deceased is incompetent and the admission of it constitutes prejudicial error." *State v. King*, 26 N.C. App. 86, 87, 214 S.E.2d 597, 597 (1975). Defendant fails to recognize that if evidence is introduced not to show the good character of the victim, but rather for another permissible purpose, then the evidence may be relevant and properly admitted. *State v. Alford*, 339 N.C. 562, 569, 453 S.E.2d 512, 515 (1995). In the present case, evidence that the victim's last words were "I'm not scared of you. I'm a Christian," were not offered as evidence of the victim's good character, but rather were offered as circumstantial evidence of defendant's state of mind when he was approaching the victim. Other evidence of the victim's good character was echoed by defendant himself and integrated into his defense. While Edwards testified that Leggett "would do anything that you want[ed]. I mean she'd do anything in the world," defendant himself testified "I can't imagine anybody would want to hurt her. She's so sweet."

As for the other evidence that defendant challenges on appeal, the photograph, the eyeglasses, and key chain, defendant bears the burden of showing that the admission of this physical evidence was plain error. The evidence against defendant was substantial and any prejudice arising from the admission of this physical evidence was *de minimis*. Therefore, defendant's assignment of plain error to the admission of this evidence is overruled.

**[5]** Defendant's fourth argument is that the trial court erroneously denied his request for a jury instruction on the defense of accident. Defendant argues the instruction was timely requested, correct in

law, supported by the evidence, and not given in substance. "Where the killing was unintentional and the perpetrator acted without wrongful purpose in the course of a lawful enterprise and without criminal negligence, a homicide will be excused as an accident." *State v. Garrett*, 93 N.C. App. 79, 82, 376 S.E.2d 465, 467 (1989). "[I]f request be made for a specific instruction, which is correct in itself and supported by evidence, the court must give the instruction at least in substance." *State v. Hooker*, 243 N.C. 429, 431, 90 S.E.2d 690, 691 (1956).

Assuming *arguendo* that the trial court erred in failing to instruct the jury on accident, a trial court's failure to submit a requested instruction to the jury is harmless unless defendant can show he was prejudiced thereby. *State v. Riddick*, 340 N.C. 338, 343, 457 S.E.2d 728, 732 (1995). "A defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." N.C. Gen. Stat. § 15A-1443(a) (2005).

"The defense of accident '. . . is not an affirmative defense, but acts to negate the *mens rea* element of homicide.' " *State v. Turner*, 330 N.C. 249, 262, 410 S.E.2d 847, 854 (1991) (quoting *State v. Lytton*, 319 N.C. 422, 425-26, 355 S.E.2d 485, 487 (1987)). In the case before us, the jury received instructions on possible lesser included offenses of second degree murder, voluntary manslaughter, and involuntary manslaughter in addition to first degree murder. The jury found that all of the elements of first degree murder were met, including the *mens rea* element. Because the jury was satisfied that defendant had the requisite intent for first degree murder and rejected other possible verdicts, including involuntary manslaughter which requires no intent, defendant was not prejudiced by the trial court's failure to instruct on accident.

**[6]** Defendant's next argument is that the trial court erroneously denied his request for a jury instruction on the defense of diminished capacity by voluntary intoxication. Defendant argues that there was substantial evidence of his intoxication, including testimony that defendant was drinking tequila straight from a one-gallon bottle and also drank three or four beers over a period of about an hour and a half. Defendant contends this evidence was sufficient to warrant an instruction on voluntary intoxication; however:

> [I]t is . . . well established that an instruction on voluntary intoxication is not required in every case in which a defendant claims that he killed a person after consuming intoxicating beverages or

controlled substances. In order to support a defense of voluntary intoxication, substantial evidence must be presented to show that at the time of the killing the defendant was so intoxicated that he was utterly incapable of forming a deliberate and premeditated purpose to kill. In the absence of evidence of intoxication to this degree, the court is not required to charge the jury on the defense of voluntary intoxication.

*State v. Baldwin,* 330 N.C. 446, 462, 412 S.E.2d 31, 41 (1992) (internal citations and quotation marks omitted). Thus, the relevant inquiry is whether evidence was presented that defendant was so drunk that he could not form the intent to kill. Addressing this question in other cases, this Court and our Supreme Court have considered other aspects of defendants' behavior in order to determine whether a voluntary intoxication instruction is warranted, such as a defendant's ability to drive and communicate with other people. *See State v. Cheek,* 351 N.C. 48, 75-76, 520 S.E.2d 545, 561 (1999); *State v. Watkins,* 89 N.C. App. 599, 606, 366 S.E.2d 876, 880 (1988). Defendant in this case was able to do both. Although defendant's actions indicated that he was intoxicated, "[e]vidence of mere intoxication . . . is not sufficient to meet defendant's burden of production." *State v. Boyd,* 343 N.C. 699, 713, 473 S.E.2d 327, 334 (1996). There was no evidence suggesting that defendant was incapable of forming a deliberate and premeditated purpose to kill.

**[7]** Defendant next argues that the "short-form" indictment did not charge first degree murder and therefore the trial court lacked jurisdiction to enter judgment for first degree murder. The North Carolina Supreme Court "has held for many years that the 'short-form' murder indictment under N.C.G.S. § 15-144 is sufficient to allege first-degree murder under theories of both premeditation and deliberation and felony murder." *State v. Davis,* 353 N.C. 1, 44, 539 S.E.2d 243, 271 (2000), *cert. denied,* 534 U.S. 839, 122 S. Ct. 95, 151 L. Ed. 2d 55 (2001). Accordingly, this assignment of error is overruled.

**[8]** Defendant's final argument is that the trial court erred in admitting evidence of defendant's prior conviction that occurred more than ten years ago. Defendant argues that the trial court failed to make sufficient findings about the probative value of the conviction and that the conviction was inadmissible because it did not involve dishonesty and was for a different crime than the one charged in the present case. The fact that the conviction was for a crime that did not involve dishonesty and was a different crime from the one charged in this case alone is not dispositive of its admissibility. When more than ten

years have passed after a conviction, evidence of the conviction is inadmissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." N.C. Gen. Stat. § 8C-1, Rule 609(b) (2005). "We interpret this part of Rule 609(b) to mean that the trial court must make findings as to the specific facts and circumstances which demonstrate the probative value outweighs the prejudicial effect." *State v. Hensley*, 77 N.C. App. 192, 195, 334 S.E.2d 783, 785 (1985). "[T]he following considerations [are] factors to be addressed by the trial court when determining if conviction evidence more than ten years old should be admitted: (a) the impeachment value of the prior crime, (b) the remoteness of the prior crime, and (c) the centrality of the defendant's credibility." *State v. Shelly*, 176 N.C. App. 575, 582-83, 627 S.E.2d 287, 294 (2006) (citing *State v. Holston*, 134 N.C. App. 599, 606, 518 S.E.2d 216, 222 (1999)). This Court has also noted that:

> [A]ppropriate findings should address (a) whether the old convictions involved crimes of dishonesty, (b) whether the old convictions demonstrated a "continuous pattern of behavior," and (c) whether the crimes that were the subject of the old convictions were "of a different type from that for which defendant was being tried."

*Id.* at 583, 627 S.E.2d at 295 (quoting *Hensley*, 77 N.C. App. at 195, 334 S.E.2d at 785).

In the present case, the court considered the following facts and circumstances of defendant's prior conviction: that the conviction was a felony conviction from 1993 in New Jersey; that defendant's status as a convicted felon made it illegal for him to possess the firearm in the present case; that the prior conviction, like the case in question, involved eluding the police; and that the prior conviction was for aggravated assault, manifesting extreme indifference to the value of human life, and recklessly causing serious bodily injury. The court incorporated by reference these facts and circumstances into its findings when it stated "under the facts and circumstances as best we can tell on the face of that record and in the context of this case [the probative value of the conviction] substantially outweigh[s] the prejudicial effect." With regard to the weight assigned to the facts and circumstances, "[t]he trial court's ultimate determination is reversible only for a manifest abuse of discretion." *Shelly*, 176 N.C. App. at 578, 627 S.E.2d at 292. Accordingly, we conclude that the trial court did not err in admitting evidence of defendant's prior conviction.

Furthermore, although defendant objected to the admission of the testimony through his motion *in limine*, he failed to object again to the evidence when it was introduced. "Our Supreme Court has consistently held that '[a] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial.' " *State v. Tutt*, 171 N.C. App. 518, 520, 615 S.E.2d 688, 690 (2005) (quoting *State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999)). Under such circumstances, the error is reviewed only for plain error. *Id.* at 714, 603 S.E.2d at 834. Even if it had been error to admit evidence of defendant's prior conviction, it does not rise to the level of plain error in light of the other evidence of defendant's intent, the limited evidence presented of the conviction, and the court's instruction that the prior conviction evidence could be considered only for the limited purpose of determining credibility.

No error.

Judges McCULLOUGH and TYSON concur.