IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-709

Filed: 18 February 2020

Mecklenburg County, No. 17 CRS 247380

STATE OF NORTH CAROLINA

v.

CLAYTON JAMES KOWALSKI

Appeal by defendant from judgment entered 14 February 2019 by Judge Carla Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 January 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L. Hyde, for the State.*

*William D. Spence for defendant-appellant.*

TYSON, Judge.

Clayton James Kowalski ("Defendant") appeals from judgment entered on the jury's verdict finding him guilty of misdemeanor assault on a female. We find no error.

## I. Background

Defendant and Katelyn Policke dated on-and-off for five years, from approximately 2012 until 2017. They lived together in an apartment for a year and a half until October 2017, when Policke moved out and into a house without

Defendant. Defendant and Policke had drinks at his parents' house on 23 December 2017. Defendant and Policke left around 11 p.m. Defendant drove Policke to her house and then drove himself home.

Policke called Defendant shortly after he returned home to discuss their relationship. Policke believed their relationship was not progressing and asserted it "was going backwards." The conversation escalated and Defendant hung up the phone. Policke repeatedly tried to call Defendant back, but he refused to speak with her.

Policke drove to Defendant's house and rang the doorbell. Policke and Defendant presented differing versions of what happened at his house during the trial.

## A. Policke's Version

Policke testified Defendant answered the door while holding a loaded shotgun. Defendant allowed Policke to come inside and they spoke. At one point, Policke went upstairs to gather her possessions and leave. Policke was sitting on Defendant's bed when he grabbed her head and tried to pull her off the bed. She fell and injured her neck. Defendant dragged her down the hallway and pushed her down the stairs. Defendant stood over Policke on the stairs, kicking and hitting her in the face.

Policke screamed, hoping someone would eventually hear her. Defendant allegedly told her, "the louder you scream, the more [I'm] going to hit [you]."

Defendant took Policke's purse and keys from her and threw them out the front door into a flower bed. Defendant threatened to call the police. Policke eventually got up and walked out the front door. She found her purse and keys and drove herself home.

Policke's mother, Kathy, testified at trial. She said Policke called her between 12:30 and 1 a.m. as she drove from Defendant's house. Policke was "in a panic" and told her mother "she had been assaulted." Kathy drove to meet her at her home as Policke told her what happened. Kathy testified Policke gave a detailed account, which was consistent with her own testimony at trial.

Kathy called the police shortly before arriving at Policke's home. Police and emergency medics responded to Policke's home. Policke went to the hospital. Policke had bruises and scratches on her cheeks and neck and complained her eardrum had burst and she could not hear.

### B. Defendant's Version

Defendant testified he heard banging on his door as well as the doorbell ringing. Defendant denied having a shotgun when he opened the door. Defendant described Policke as "upset but not violent at that moment."

Defendant went upstairs and Policke followed. They sat on his bed and continued discussing the status of their relationship. Defendant testified he told Policke, "until there's no problems and you don't have violent -- you know, end up getting violent, I can't give a ring to someone that acts like that." Policke continued

to question Defendant about their relationship until "she felt like [Defendant] was ignoring her," at which point she slapped Defendant in his face.

Defendant told Policke she had to leave. Policke punched Defendant in the arm. Defendant pushed her away onto his bed and went downstairs. Policke followed Defendant down the stairs, but she stumbled and fell. Defendant opened the front door and told Policke to leave his home. She was yelling loudly at him and did not leave. Defendant closed the front door and called the police while Policke resumed slapping and punching him. When Policke told Defendant she would leave, he hung up the phone call. She did not leave.

Defendant went into the kitchen and Policke followed. Policke swung at Defendant and fell into his stove. Defendant denied pushing her into his stove. Policke tried to punch Defendant again after following him to the living room. Defendant threatened to call the police again. He took her purse and threw it out the front door. Policke left to look for it and Defendant closed and locked the door. Defendant denied slapping, punching, or kicking Policke.

## C. Adjudication

Defendant was charged with assault on a female on 24 December 2017, and Policke obtained an *ex parte* domestic violence protective order ("DVPO") that same day. After Policke received a blank text message from Defendant on 26 December

2017, he was charged with violating the DVPO on 3 January 2018. The State joined both charges for trial.

The jury found Defendant guilty of misdemeanor assault on a female on 14 February 2019. The jury found Defendant not guilty of violating the DVPO. The trial court sentenced Defendant to a suspended sentence of 75 days' imprisonment and placed Defendant on supervised probation for 18 months. Defendant filed his written notice of appeal on 27 February 2019.

## II. Jurisdiction

This Court possesses jurisdiction over Defendant's appeal from judgment as a matter of right pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2019).

## III. Issues

Defendant argues the trial court abused its discretion by prohibiting Defendant from cross-examining Policke about her prior mental health history. Defendant also argues the trial court committed plain error in its instruction to the jury.

## IV. Cross-Examination

Policke and Kathy each testified for the State, along with an officer from the Huntersville Police Department. During cross-examination of Policke, Defendant's counsel began a line of questioning by asking Policke if she gets aggressive "when things don't go your way[.]" Defendant's counsel then asked about a previous incident

in which Policke had allegedly attacked her mother. The State objected, and the trial court excused the jury. The court heard arguments from both parties on the issue and conducted a *voir dire* of Defendant's line of questioning to "see where this leads."

Defendant's counsel demonstrated the proposed cross-examination of Policke in *voir dire*. Defendant's counsel asked some questions about prior incidents of Policke's physical aggression, anger, and her mental health and treatment. The State objected to the relevance of the questions, which the trial court overruled for the purpose of taking the *voir dire*. The trial court heard arguments on the admissibility of the proposed testimony at the conclusion of Defendant's *voir dire* cross-examination.

The trial court ruled some of Defendant's proposed line of questioning admissible, but determined the questions concerning Defendant's mental health and treatment were not relevant and inadmissible. Additionally, the trial court ruled "to the extent [the questions had] some attenuated relevance, [they are] more prejudicial than [they are] probative." Defendant did not attempt to elicit any of the proposed testimony about Policke's mental health when cross-examination resumed in front of the jury.

## A. Preservation

The State argues Defendant failed to preserve this issue for appellate review by failing to elicit the contested testimony in the presence of the jury. The State cites

*State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990), to support its argument. The State's reliance on *Coffey* is misplaced.

In *Coffey*, the State called a police officer to testify and the trial court conducted a *voir dire* of his proposed testimony. *Id.* at 286-87, 389 S.E.2d at 59. The court ruled most of the officer's proposed testimony was inadmissible hearsay. *Id.* at 287, 389 S.E.2d at 59.

During the *voir dire*, the defendant's counsel asked if he could question the officer about another possible culprit for the crime charged. *Id.* "The trial court indicated that the defendant's counsel could do so, but that the trial court would sustain an objection to such questions at that time." *Id.* When the jurors returned, the defendant's counsel had no questions for the officer on cross-examination. *Id.* The defendant's counsel did not attempt to elicit and preserve the proposed testimony from the officer, even during the *voir dire. Id.*

One purpose of conducting a *voir dire* examination of contested evidence, when a trial court determines its admissibility, is to preserve an offer of proof of the evidence for appellate review. *See id.* at 289-90, 389 S.E.2d at 61 (where "the defendant never actually attempted to introduce [the contested] evidence . . . . the defendant may not now be heard to complain on appeal that such evidence was not before the jury *or that the trial court did not allow him to cause the record to show what any such evidence might have been.*") (emphasis supplied); *see also State v.*

*Chapman*, 294 N.C. 407, 415, 241 S.E.2d 667, 672 (1978) ("A judge should be loath to deny an attorney his right to have the record show the answer a witness would have made when an objection to the question is sustained. In refusing such a request the judge incurs the risk . . . that the Appellate Division may not concur in his judgment that the answer would have been immaterial or was already sufficiently disclosed by the record.").

Unlike the defendant's counsel in *Coffey*, Defendant's counsel elicited Policke's contested testimony in *voir dire,* secured a ruling from the trial judge, and preserved the issue in the record for review on appeal.

## B. Standards of Review

"[A]lthough cross-examination is a matter of right, the scope of cross-examination is subject to appropriate control in the sound discretion of the court." *State v. Larrimore*, 340 N.C. 119, 150, 456 S.E.2d 789, 805 (1995) (citations omitted); *see also* N.C. Gen. Stat. § 8C-1, Rule 611(a) (2019). "In general, we review a trial court's limitation on cross-examination for abuse of discretion." *State v. Bowman*, 372 N.C. 439, 444, 831 S.E.2d 316, 319 (2019).

"Even though a trial court's rulings on relevancy [under Rule 401] technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Muhammad*, 186 N.C. App. 355, 360, 651 S.E.2d 569, 573 (2007) (citation and

alterations omitted). "We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008).

## C. Analysis

Defendant argues the trial court abused its discretion in limiting his trial counsel's cross-examination of Policke by ruling portions of his intended questioning not relevant and more prejudicial than probative.

"Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2019). "Relevant evidence, as a general matter, is considered to be admissible. . . . Any evidence calculated to throw light upon the crime charged should be admitted by the trial court." *State v. McElrath*, 322 N.C. 1, 13, 366 S.E.2d 442, 449 (1988) (citations and internal quotation marks omitted). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" under Rule 403. N.C. Gen. Stat. § 8C-1, Rule 403 (2019).

Defendant argues the proposed cross-examination of Policke was relevant evidence for the purpose of impeaching her credibility. *See State v. Williams*, 330 N.C. 711, 723, 412 S.E.2d 359, 367 (1992) ("Where, as here, the witness in question is a key witness for the State, this jurisdiction has long allowed cross-examination

regarding the witness' past mental problems or defects."). "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C. Gen. Stat. § 8C-1, Rule 611(b) (2019). However, evidence that has no bearing on truthfulness or untruthfulness is not proper impeachment evidence. *State v. Call*, 349 N.C. 382, 411, 508 S.E.2d 496, 514 (1998); N.C. Gen. Stat. § 8C-1, Rule 608(b) (2019).

The excluded testimony at issue concerned prior instances of Policke's mental health and treatment. One instance involved treatment Policke had sought for childhood trauma. The trial court noted Defendant's counsel did not ask Policke about nor attempt to introduce evidence of a mental health diagnosis or mental state in the proposed cross-examination.

Defendant has not shown the excluded testimony was relevant to Policke's truthfulness or untruthfulness to challenge her credibility before the jury. *See Call*, 349 N.C. at 411, 508 S.E.2d at 514. Defendant has not shown the trial court committed prejudicial error in ruling the proposed cross-examination was not relevant under Rule 401. To the extent the excluded evidence may have had some relevance, the trial court's ruling that the proposed testimony was more prejudicial than probative under Rule 403 was not an abuse of discretion. Defendant's argument is overruled.

## V. Jury Instructions

A. Standard of Review

Defendant failed to proffer instructions or to object to the jury instructions given by the trial court.

> In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C. R. App. P. 10(a)(4). To "specifically and distinctly" show plain error to challenge instructions given to the jury, Defendant "must show that a fundamental error occurred at his trial and that the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Towe*, 366 N.C. 56, 62, 732 S.E.2d 564, 568 (2012) (citations and internal quotation marks omitted).

B. Analysis

Defendant argues the trial court committed plain error in charging the jury that the State needed to prove Defendant had intentionally assaulted Policke by "grabbing, pushing, dragging, kicking, slapping, and/or punching" when the criminal summons charged Defendant with "striking her neck and in her ear."

Defendant correctly argues: "It has long been the law of this State that a defendant must be convicted, if convicted at all, of the particular offense charged in the warrant or bill of indictment." *State v. Williams*, 318 N.C. 624, 628, 350 S.E.2d 353, 356 (1986) (citations omitted). "[T]he failure of the allegations [in a warrant or

indictment] to conform to the equivalent material aspects of the jury charge represents a fatal variance, and renders the indictment insufficient to support that resulting conviction." *Id.* at 631, 350 S.E.2d at 357.

However, "[a] criminal defendant will not be heard to complain of a jury instruction given in response to his own request." *State v. McPhail*, 329 N.C. 636, 643, 406 S.E.2d 591, 596 (1991). "A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c) (2019). "[A] defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001), *disc. review denied*, 355 N.C. 216, 560 S.E.2d 141 (2002).

The trial court followed the pattern jury instruction for misdemeanor assault on a female, which requires the court to describe the alleged assault. *See* N.C.P.I.-- Crim. 208.70 (2019). During the charge conference, the trial court proposed describing Defendant's alleged assaultive conduct in its jury instructions as "grabbing, pushing, dragging and/or kicking." Defendant's counsel replied: "I think there was slapping and punching in there as well. I think that is what they are alleging. So drag, punched, slapped, kicked."

The trial court incorporated Defendant's counsel's addition of "slapping and punching" to its original proposed instruction, resulting in the final description in the

jury instruction as Defendant: "grabbing, pushing, dragging, kicking, slapping, and/or punching" Policke.

Defendant's counsel failed to object to the variance he now alleges to have been plain error. Defendant's counsel did not request the trial court include the specific language of "striking her neck and in her ear" from the criminal summons. Rather, Defendant's counsel contributed to the variance by adding more descriptive words, which were consistent with the evidence presented at trial by the State and not found in the criminal summons.

The variance, which Defendant now alleges is plain error, resulted in part from his own conduct in the proposed instructions. Defendant cannot show prejudice. *See* N.C. Gen. Stat. § 15A-1443(c). Defendant's asserted error, if any, was invited and he "will not be heard to complain" on appeal. *See McPhail*, 329 N.C. at 643, 406 S.E.2d at 596. Defendant's argument is overruled.

## VI. <u>Conclusion</u>

Defendant preserved the excluded testimony and the issue of the trial court's limitation of his cross-examination of Policke for appellate review. Defendant has not shown relevancy or that the trial court abused its discretion by limiting his cross-examination of Policke to exclude certain testimony about her mental health and treatment to challenge her credibility.

Defendant's counsel did not object to the jury instruction as a fatal variance, which he now alleges was plain error to warrant a new trial. The unpreserved error, if any, was invited error, as Defendant's counsel contributed to the variance. Defendant received a fair trial, free from prejudicial errors he preserved and argued. We find no reversible errors to award a new trial. *It is so ordered.*

NO ERROR.

Judges DIETZ and INMAN concur.