STATE OF NORTH CAROLINA v. FREDERICK WAYNE McPHAIL

No. 189A89

(Filed 14 August 1991)

1. **Constitutional Law § 313 (NCI4th); Appeal and Error § 147 (NCI4th)— effective assistance of counsel—issue raised for first time on appeal**

    Defendant could not contend for the first time on appeal that allowing his expert to be called and to testify as a witness for the State violated his sixth amendment right to effective assistance of counsel; however, even if it were error to allow defendant's expert to testify as a witness for the State, such error would not be prejudicial, since the testimony of defendant's expert tended primarily to be repetitive of the otherwise uncontradicted testimony by the State's expert.

    **Am Jur 2d, Appeal and Error § 545.**

2. **Homicide § 21.5 (NCI3d)— first degree murder—malice, premeditation and deliberation—sufficiency of evidence**

    Evidence was sufficient to show that defendant killed the victim with malice, premeditation and deliberation, and the trial court did not err in submitting the charge of first degree murder to the jury on that theory where the evidence tended to show that the victim was shot while lying face down on the floor, his legs wrapped with an electric cord; he died of a gunshot wound to the middle of his back which went directly to and through his heart; the bullet entry wound was a contact wound, meaning that the gun was pressed against the victim's back when fired; the weapon which defendant admitted using and which killed the victim would not fire unless the trigger was pulled; and defendant admitted that he knew the gun had to be cocked to be fired and that there was no other safety on the gun, that he rendered the victim helpless by making him lie face down on the floor and tying his legs with a cord, that he made the plan to rob the store when he saw the victim there alone, that he took the loaded gun with him and planned to use it in the robbery, that he told the victim not to move, and that he intentionally pressed the gun firmly against the victim's back.

    **Am Jur 2d, Homicide § 439.**

STATE v. McPHAIL

[329 N.C. 636 (1991)]

3. **Criminal Law § 747 (NCI4th)— defendant's confession—jury instructions proper—instructions given as requested**

   Any error of the trial court in stating during its jury instructions that there was evidence tending to show that defendant confessed that he had committed the crime charged was not prejudicial, since the instruction was taken verbatim from the N. C. Criminal Pattern Jury Instructions, and the instruction was made pursuant to defendant's specific request.

   **Am Jur 2d, Trial § 811.**

4. **Criminal Law § 1352 (NCI4th)— mitigating circumstances— unanimous finding required—prejudicial error**

   The trial court erred in requiring that the jury not find a mitigating circumstance unless it found unanimously that the circumstance existed, and such error was prejudicial where the jury failed unanimously to find the existence of any mitigating circumstance, and defendant presented substantial evidence from which one or more jurors may have believed that one or more of those circumstances existed, including that defendant had served in the New York State National Guard and had been discharged honorably; defendant offered no resistance upon his arrest in New Jersey; defendant made a voluntary confession to law enforcement officers; and defendant voluntarily waived extradition and returned to North Carolina.

   **Am Jur 2d, Criminal Law § 628.**

   **Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment and sentence of death entered by *Grant, J.,* at the 10 April 1989 Criminal Session of Superior Court, NEW HANOVER County. Heard in the Supreme Court on 7 May 1991.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Harry H. Harkins, Jr., for the defendant-appellant.*

MITCHELL, Justice.

The defendant was indicted for the murder of Jon Matthew Mason and was tried capitally on that murder charge at the 10

STATE v. McPHAIL

[329 N.C. 636 (1991)]

April 1989 Criminal Session of Superior Court, New Hanover County. The jury found the defendant guilty of first-degree murder on the theories of premeditation and deliberation and felony murder. After a sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial court entered a sentence of death. On appeal, we conclude that the defendant's trial and conviction were free from prejudicial error. However, under the recent decision of the Supreme Court of the United States in the case of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990), the State concedes that the sentence of death entered against the defendant must be vacated and this case remanded to the Superior Court for a new capital sentencing proceeding.

The State's evidence tended to show that nineteen-year-old Jon Matthew Mason was working as a clerk in a store in Wilmington on 27 April 1988. At approximately 7:00 p.m., Mason's mother and father came by the store to bring him dinner and then left. At 9:05 p.m., Michael Smith, a former employee of the store, came to the store to visit and found Jon Matthew Mason's body lying face down on the floor behind the counter. An extension cord was wrapped loosely around Mason's legs. The police and the manager of the store were called. The manager discovered that approximately $200.00 was missing from the cash register.

An autopsy revealed a gunshot wound to Mason's back about fifteen inches from the top of his head. The bullet had passed through Mason's body and come to rest in the soft tissue of his chest. The medical examiner testified that Mason had died as a result of massive internal bleeding caused by the gunshot wound. In his opinion, Mason did not die immediately but probably became unconscious after approximately a minute as a result of the injury. The medical examiner also noted that the wound was red and burned, which indicated that the muzzle of the gun was in hard contact with the skin when the gun was fired.

Wade Davidson testified that he had worked with the defendant at Greentree Inn in early 1988 and had shared an apartment with the defendant in April 1988. Davidson testified that he had stolen a .38 caliber Derringer from a room at the Greentree Inn and subsequently sold it to the defendant for $30.00. He also had accompanied the defendant when the defendant purchased a box of .38 caliber hollow-point bullets for the gun. In addition, he had practiced firing the gun with the defendant.

STATE v. McPHAIL

[329 N.C. 636 (1991)]

On the night Mason was killed, 27 April 1988, the defendant came home around 10:00 p.m. and asked Davidson for a ride out of the state. Davidson saw that the defendant had the .38 caliber Derringer, and he asked the defendant if he had used the gun. The defendant responded, "Yes, and watched the blood spurt out." The defendant then bought a knapsack from JoAnn Williams, Davidson's girlfriend, for $20.00. The defendant stated that he would not return and left on foot with his belongings in the knapsack.

The defendant hitchhiked to Moorestown, New Jersey, where his brother, James McPhail, lived. On the way there, he telephoned his brother, Bill McPhail, in Lockport, New York, and gave him some information concerning the crime. On 2 May 1988, Bill McPhail telephoned the Wilmington Police Department and reported that the defendant had committed a robbery and murder in Wilmington. Bill also called his brother James to give him the same information. When the defendant arrived at James McPhail's residence, James called the Moorestown Police Department and requested that officers come to his residence to talk with the defendant about a shooting in Wilmington, North Carolina. The Moorestown Police Department then contacted the Wilmington Police Department and confirmed that the defendant was a suspect in a homicide. The Moorestown police entered James McPhail's residence and took the defendant into custody. They also seized the knapsack which contained a .38 caliber Derringer, approximately thirty .38 caliber hollow-point bullets and two spent shell casings.

North Carolina officers went to New Jersey on 13 May 1988 and brought the defendant, who had waived extradition, back to North Carolina for trial. On 25 July 1988, the defendant asked to make a statement about the crime to police with his attorneys present. In the resulting videotaped interview, the defendant confessed to the armed robbery and the killing of Jon Matthew Mason during the robbery. The defendant maintained, however, that the gun went off by accident as he was "jabbing" Mason. At trial, the State introduced the videotape as evidence.

Robert W. Murphy, a firearms expert with the Federal Bureau of Investigation, compared the bullet removed from the victim's body with the gun seized from the defendant's knapsack. He determined that the bullet had been fired from that gun. He also testified that the gun would not fire unless the trigger was pulled. He tested the weapon and found that it took between four and four

STATE v. McPHAIL

[329 N.C. 636 (1991)]

and one-quarter pounds of pressure to pull the trigger once the hammer was cocked. In his opinion, the gun would not fire unless the trigger was pulled; merely pushing the rear of the gun would not cause it to fire, even if the hammer was cocked.

Frank G. Satterfield, Jr., another firearms expert, also examined the gun. He testified that it took five pounds of pressure to pull the trigger. He too opined that the weapon functioned properly.

The defendant presented no evidence at the guilt-innocence determination phase of his trial.

[1] By his first assignment of error, the defendant contends the trial court erred in allowing the State to call the defendant's firearms expert as a witness for the State. The defendant argues that allowing the State to introduce the testimony of this witness violated his sixth amendment right to effective assistance of counsel.

Prior to trial, the indigent defendant obtained an order granting him $500.00 to hire a ballistics expert "to examine the .38 Derringer, to look at its firing mechanisms, working conditions, to test its trigger pressure and to make a written report of his findings to the defendant's attorney and, if requested, to testify at trial on the defendant's behalf." The defendant hired Frank G. Satterfield, Jr., a former SBI agent. Satterfield examined and tested the murder weapon at the SBI laboratory in the presence of SBI Agent James Lightner who had the weapon in his custody. As a result of his examination, Satterfield determined that the gun was functioning properly, that five pounds of pressure on the trigger was needed to fire the gun and that the trigger had to be pulled before the gun would fire. Satterfield discussed his findings with the defendant's counsel, who decided not to call Satterfield as a witness or otherwise use his findings. The State called Satterfield as a witness at trial, and he testified concerning his examination of the gun and the opinion he had reached as a result of his examination.

Prior to Satterfield being called as a witness, the defendant objected on the ground that allowing his own expert to testify for the State would violate his due process rights under the fourteenth amendment. The trial court overruled that objection.

On appeal, the defendant now contends for the first time that allowing his expert to be called and to testify as a witness for

the State violated his sixth amendment right to effective assistance of counsel. Having failed to challenge the admission of the evidence in question on this ground during the trial, the defendant will not be allowed to do so for the first time on his appeal to this Court. *State v. Moore,* 316 N.C. 328, 341 S.E.2d 733 (1986); *State v. Williams,* 308 N.C. 47, 301 S.E.2d 335 (1983), *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 177 (1983), *reh'g denied,* 464 U.S. 1004, 78 L. Ed. 2d 704 (1983); *State v. Hunter,* 305 N.C. 106, 286 S.E.2d 535 (1982); App. R. 10(b)(1). We specifically reject the defendant's assignment of error for that reason.

Even if we were to reach and decide the issue the defendant seeks to present by this assignment, however, he would not be entitled to relief. Assuming *arguendo* that the trial court committed constitutional error in this capital case by allowing the defendant's firearms expert to be called and to testify as a witness for the State, the error was harmless beyond a reasonable doubt. In this case, the State's firearms expert, Robert Murphy, testified that the gun that killed the victim would not fire unless the trigger was pulled and that it took four and one-quarter pounds of pressure to pull the trigger. Later, after being called by the State, the defendant's firearms expert, Frank Satterfield, testified that the gun would not fire unless the trigger was pulled and that it took five pounds of pressure to pull the trigger. Any variance between the testimony given at trial by the two experts clearly was *de minimis.* Since the testimony of the defendant's expert tended primarily to be repetitive of the otherwise uncontradicted testimony by the State's expert—that the gun would not fire unless the trigger was pulled and that it took four and one-quarter pounds of pressure to pull the trigger—the defendant was not prejudiced by the testimony of his firearms expert.

[2] The defendant next assigns as error the trial court's denial of his motion to dismiss the first-degree murder charge. Specifically, the defendant argues here that the trial court erred by submitting the charge of first-degree murder to the jury on the theory of premeditation and deliberation. In support of this assignment, the defendant contends that the evidence introduced at trial would not support any reasonable finding other than that the victim was accidentally killed. Therefore, he argues that no substantial evidence was introduced tending to show that he killed Jon Matthew Mason intentionally after premeditation and deliberation. We disagree.

STATE v. McPHAIL

[329 N.C. 636 (1991)]

In ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each element of the offense charged and that the defendant is the perpetrator. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982).

> Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The term "substantial evidence" simply means "that the evidence must be existing and real, not just seeming or imaginary." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

*State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). Further, the trial court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference. *Id.* at 237, 400 S.E.2d at 61. If there is substantial evidence of each element of the offense charged or lesser included offenses, the trial court must deny a defendant's motion to dismiss as to those charges supported by substantial evidence and submit them to the jury for its consideration; the weight and credibility of such evidence is a question reserved for the jury. *Id.* at 236-37, 400 S.E.2d at 61.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. N.C.G.S. § 14-17 (1986); *see Vause*, 328 N.C. at 238, 400 S.E.2d at 62. Premeditation and deliberation generally must be established by circumstantial evidence because they ordinarily are not susceptible to proof by direct evidence. *Id.* "Premeditation" means that the defendant formed the specific intent to kill the victim some period of time, however short, before the actual killing. *Id.* "Deliberation" means that the intent to kill was formed while the defendant was in a cool state of blood and not under the influence of a violent passion suddenly aroused by sufficient provocation. *Id.* In the context of determining the existence of deliberation, however, the term "cool state of blood" does not mean an absence of passion and emotion. *Id.* One may deliberate, may premeditate, and may intend to kill after premeditation and deliberation, although prompted and, to a large extent, controlled by passion at the time. *Id.*

The evidence in the present case tended to show that Jon Matthew Mason was shot while lying face down on the floor, his legs wrapped with an electric cord. He died of a gunshot wound to the middle of his back which went directly to and through his

heart. The bullet entry wound was a contact wound, meaning that the gun was pressed against the victim's back when fired. The weapon which the defendant admitted using and which killed the victim would not fire unless the trigger was pulled.

Furthermore, in his videotaped confession, the defendant admitted that (1) he knew the gun had to be cocked to be fired and that there was no other safety on the gun, (2) he rendered Jon Matthew Mason helpless by making him lie face down on the floor and tying his legs with a cord, (3) he made the plan to rob the store when he saw Mason there alone, (4) he took the loaded gun with him and planned to use it in the robbery, (5) he told Mason not to move and Mason did not move, and (6) he intentionally pressed the gun firmly against Mason's back. There was also testimony by the defendant's roommate that the defendant told him he had fired the gun and "watched the blood spurt out."

Taken in the light most favorable to the State, there was substantial evidence that the defendant killed Jon Matthew Mason with malice, premeditation and deliberation. The trial court did not err in submitting the charge of first-degree murder to the jury on that theory. This assignment of error is without merit.

[3] The defendant next contends that the trial court erred by stating during its instructions to the jury that there was evidence tending to show that the defendant confessed that he had committed the crime charged. At trial, pursuant to the defendant's specific request during the charge conference, the trial court read North Carolina Criminal Pattern Jury Instruction 104.70 verbatim as follows:

> There is evidence which tends to show that the defendant confessed that he committed the crime charged in this case. If you find that the defendant made that confession, then you should consider all of the circumstances under which it was made in determining whether it was a truthful confession and the weight you will give to it.

The defendant made no request for modification of the pattern jury instruction; in fact, he specifically requested the exact language of the charge that was given. A criminal defendant will not be heard to complain of a jury instruction given in response to his own request. *State v. Cook*, 263 N.C. 730, 140 S.E.2d 305 (1965); *State v. Plowden*, 65 N.C. App. 408, 308 S.E.2d 918 (1983). Since

he asked for the exact instruction that he now contends was prejudicial, any error was invited error. Therefore, this assignment is without merit and is overruled.

By his next assignment of error, the defendant contends that the trial court erred in admitting testimony from the victim's father. Prior to trial, the defendant made a motion *in limine* to prohibit the testimony of Carl Mason, the victim's father. At a pretrial hearing, the trial court denied the motion. The defendant contends that the testimony was irrelevant and had no purpose other than to incite sympathy for the victim and his family. We disagree.

Carl Mason testified that on 27 April 1988 at approximately 7:00 p.m., he went with his wife to the store where their son worked and took him his dinner. Carl Mason gave his son's age, height and weight and described the lighting conditions of the store. His testimony tended to show, first, that the victim was alive when the defendant shot him. *See State v. Beale*, 324 N.C. 87, 90, 376 S.E.2d 1, 2 (1989). His testimony was also relevant to show who the victim was, where he was during the commission of the crime and why he was there. The trial court did not err in denying the defendant's motion to exclude this testimony. This assignment of error is without merit. .

We conclude that the guilt-innocence determination phase of the defendant's trial was free of prejudicial error. Accordingly, we turn to the defendant's assignments of error relating to his capital sentencing proceeding.

[4]  By his next assignment of error, the defendant contends the trial court erred in instructing the jury that when determining whether to recommend life imprisonment or death, it was not to consider a circumstance in mitigation unless it unanimously found that it existed. The State concedes that this instruction was erroneous and that, on the particular facts of this case, the defendant is entitled to a new capital sentencing proceeding. We agree.

Because the trial court required that the jury unanimously find any mitigating circumstance before that circumstance could be considered in its ultimate sentencing recommendation, the trial court's instruction violated the principles of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). The *McKoy* error here is not harmless because the defendant presented substantial evi-

**STATE v. McPHAIL**

[329 N.C. 636 (1991)]

dence to support at least some of the twenty-three mitigating circumstances submitted to, but not found by, the jury.

Among the submitted circumstances were (1) the defendant had served in the New York State National Guard and had been discharged honorably, (2) the defendant offered no resistance upon his arrest in New Jersey, (3) the defendant made a voluntary confession to law enforcement officers, and (4) the defendant voluntarily waived extradition and returned to North Carolina. One or more of the jurors may have believed that one or more of those circumstances existed. Yet, the trial court's instructions prohibited any juror from finding and considering any such circumstances because they were not unanimously found by the jury. Had each juror been allowed to consider the circumstances that he or she believed to exist and to be mitigating—but that other jurors did not find—we cannot say beyond a reasonable doubt that there would not have been a different jury recommendation as to the sentence to be imposed. N.C.G.S. § 15A-1443 (1988); *see State v. McKoy*, 327 N.C. 31, 45, 394 S.E.2d 426, 434 (1990). Therefore, we are required to vacate the sentence of death and remand this case to the Superior Court, New Hanover County, for a new capital sentencing proceeding. Our holding in this regard makes it unnecessary for us to consider the other assignments of error concerning the defendant's capital sentencing proceeding.

For the foregoing reasons, we hold that the guilt-innocence determination phase of the defendant's trial was free from prejudicial error. However, the sentence of death is vacated and this case remanded to the Superior Court, New Hanover County, for a new capital sentencing proceeding.

Guilt phase: No error.

Death sentence vacated and case remanded for new capital sentencing proceeding.