IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 23-749

Filed 20 August 2024

Forsyth County, No. 20 CRS 59369

STATE OF NORTH CAROLINA

v.

FREDERICK PLOTZ, Defendant.

Appeal by Defendant from Judgment entered 1 February 2023 by Judge Robert Broadie in Forsyth County Superior Court. Heard in the Court of Appeals 2 April 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General A. Mercedes Restucha, for the State.*

*Daniel M. Blau for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Frederick Plotz (Defendant) appeals from a Judgment entered on a jury verdict convicting him of Misdemeanor Stalking. The Record—including the evidence presented at the jury trial—reveals the following:

In 2019, Julious Parker, a 65-year-old Black man, moved into his new residence, one half of a duplex in Winston-Salem. Defendant lived in the other half of the duplex. Parker and Defendant had no communication with each other from the

time Parker moved in until the following interactions occurred.

One night in July 2020, at approximately 4 AM, Parker observed Defendant taking yard waste and placing it on an existing pile on Parker's side of the yard. Parker went outside to confront Defendant, leading to the following exchange, as testified to by Parker:

| | |
|---|---|
| Parker: | Excuse me. You need to put that stuff on your side. |
| Defendant: | You started that. |
| Parker: | Started what? |
| Defendant: | Boy. |
| Parker: | You call me what? |
| Defendant: | Nigga. |

Defendant then returned to his house.

The next day, Parker found a letter from Defendant in his mailbox, addressed to "Occupant/Tenant" and indicating the owner of Parker's half of the duplex had been copied. The letter begins:

> Printed this out and hope it's clear *to you* in terms of our city ordinance(s). At the law firm, we deal with both civil and local ordnance. (sic) It would benefit you to read this as I highlighted the most significant sections of our city's sub code. Sec. 74-19 is for your review hoping your level of literacy lends itself to clear comprehension and the necessary expedience of your subsequent pending remedy.

The letter complains about a pile of debris in Parker's yard and alleges that it obstructs visibility for vehicles. It continues:

> Secondly, you may want to consider encroachment and

destruction of property as it relates to trespassing. I will soon have to post NO TRESPASSING signs (no thanks to you). Do not cut or tamper the with (sic) survey line (again). Other than my recordation of said event(s) there are other means of surveillance employed. You've certainly made a huge statement about yourself based on the enormous junk & debris pile in front of YOUR RESIDENCE on <u>our</u> street. Not good! Not very bright, either. *Complete disregard on many counts,* **but mostly for the safety of drivers to navigate a residential street, in the city of Winston-Salem, North Carolina.**

(emphasis in original). The letter ends by quoting purportedly verbatim the majority of Section 74-19 of the Winston-Salem Code of Ordinances, which addresses the responsibility of residents to keep streets and sidewalks clear from vegetation.

Upon receiving this letter, Parker called the owner of his residence, who advised that he call the police. He did so, and officers arrived and spoke with Defendant.

Following this exchange, from July through August 2020, Defendant began placing milk jugs filled with water in his driveway. Some of these jugs had a letter written on them and were positioned such that Parker could read the letters from his bedroom window. Defendant would move the jugs around on his driveway and position them so that one jug at a time faced Parker's window. Parker informed the owner and began to take pictures of the jugs. He noticed that the jugs spelled out different words, one letter each day spelling out "N" "I" "G" "G" "A" and later "H" "O" "M" "O". On other days the jugs displayed two letters at a time, "F. N." and "Q. N." Parker understood these to be abbreviations for homophobic and racist slurs.

On several occasions during this time period, Defendant would rev his truck's engine with its taillights aimed at Parker's bedroom window at around 2:00 AM. Parker placed video cameras at the front of his property, which captured video recordings of Defendant positioning milk jugs and running his truck in the early hours of the morning. It also captured Defendant pointing a flashlight at Parker's floodlight sensor.

Parker testified at trial to multiple encounters he had with Defendant during July and August 2020. During one, Defendant "threw up his middle finger" at Parker and called him a racial slur. During another, Defendant, apparently speaking on the phone, spoke loudly enough while outside that Parker could hear him say: "Yeah they need to go back on his other side of town." During other telephone conversations Defendant would "talk about bullets, ammo, gun," at a volume Parker interpreted as intended to allow him to overhear. Defendant would also at night bang on the adjoining wall between their residences, which was Parker's bedroom wall.

Following these events, Parker called the police a second time. Upon their advice, Parker went to the magistrate's office to take out charges against Defendant. The State filed a Misdemeanor Statement of Charges on 28 June 2021 charging Defendant with Misdemeanor Stalking and Disorderly Conduct by Abusive Language. Defendant received a bench trial in District Court on 4 August 2021. At this bench trial, Defendant was found not guilty of Misdemeanor Disorderly Conduct by Abusive Language. However, Defendant was found guilty of Misdemeanor

Stalking. Defendant appealed this conviction to Superior Court.

Defendant was tried *de novo* in Superior Court on 30 January 2023. At trial, Parker testified to the above. Defendant testified that he had lived in the residence for nearly 40 years and that his family was "the original anchor family in the neighborhood." He said that when Parker moved in during 2019 Defendant attempted to introduce himself, but Parker turned to the men helping him move and said "Look, a cracker neighbor." He denied calling Parker slurs or spelling out slurs with the milk jugs. He explained that he would fill the jugs with water to distribute to unhoused persons, and that he would label them with the initials of different individuals. He also testified that the jugs in Parker's photographs were not placed where he had put them and appeared to have been moved. He denied banging on the adjoining wall and explained that the phone calls Parker overheard involving "ammo" and "gun" were likely conversations about varieties of coffee sold by the Black Rifle Coffee Company. He testified that he had not intended to intimidate or harass Parker.

On 1 February 2023, the jury returned its verdict finding Defendant guilty of Misdemeanor Stalking. The trial court sentenced Defendant to 18 months of supervised probation and a 15-day active sentence. Defendant gave written notice of appeal.

## **Issues**

The multiple issues raised by Defendant on appeal are whether: (I) the trial court erred in instructing the jury on Misdemeanor Stalking without limiting its

consideration to the course of conduct alleged in the charging instrument; (II) the trial court erred by failing to provide a limiting instruction regarding evidence of Defendant's conduct not alleged in the charging instrument; (III) the trial court's jury instruction as to the elements of Misdemeanor Stalking was improper because it allowed the jury to consider the infliction of fear of death or bodily injury as an element, which was unsupported by the evidence and was not alleged in the charging instrument; (IV) Defendant received ineffective assistance of counsel because Defendant's trial counsel failed to object at trial regarding any of those issues; and, (V) there was sufficient evidence to support his conviction for Misdemeanor Stalking.

## Analysis

I. Jury instructions regarding course of conduct alleged in charging instrument

Defendant first argues the trial court erred by failing to instruct the jury as to the specific course of conduct alleged in the Misdemeanor Statement of Charges, allowing the jury to find him guilty of Misdemeanor Stalking upon a theory of conduct not alleged in the charging instrument.

Stalking is the (1) willful harassment on multiple occasions or (2) willful engagement in a course of conduct without legal purpose that the defendant knows or should know would cause a reasonable person (a) to fear for their safety or the safety of immediate family or close personal associates or (b) suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment. N.C. Gen. Stat. § 14-277.3A(c) (2023). The Statement of Charges filed

against Defendant alleges he engaged in a course of conduct directed at Parker "by placing milk jugs outside of Mr. Parker's home spelling the words 'nigga' and 'homo.' " During the jury charge, the trial court instructed the jury on the elements of stalking:

> The Defendant has been charged with stalking. For you to find the Defendant guilty of this offense, the State must prove two things beyond a reasonable doubt.
>
> First, that the Defendant willfully engaged in a course of conduct directed at the victim without legal purpose.
>
> And second, that the Defendant at the time knew or should have known that the course of conduct would create a reasonable person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.

The trial court did not specify to the jury that it was required to find the course of conduct described in the Misdemeanor Statement of Charges—the placement of the milk jugs—as the basis for a stalking conviction. Defendant argues that, because evidence was presented at trial of additional conduct—including the first July 2020 confrontation, placing the letter in Parker's mailbox, revving his truck's engine at night, aiming a flashlight at Parker's floodlights, banging on the adjoining wall, calling him slurs, and using threatening language while on the phone—the jury instruction was ambiguous and potentially allowed the jury to convict based on a theory of conduct not alleged in the charging instrument.

*A. Invited Error*

As a threshold matter, the State argues that Defendant invited any error by agreeing to the jury instructions given, foreclosing his appeal on this issue. In general, we review jury instructions for plain error when the defendant failed to object at trial. *State v. Hooks*, 353 N.C. 629, 633, 548 S.E.2d 501, 505 (2001); *State v. Hardy*, 353 N.C. 122, 131, 540 S.E.2d 334, 342 (2000) (reviewing jury instructions for plain error when defendant had "ample opportunity to object to the instruction outside the presence of the jury" and did not do so). However, "a defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c). "Thus, a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001).

During the charge conference, the trial court discussed with counsel for Defendant and the State the jury instructions regarding Misdemeanor Stalking:

> The State: Yes, your honor. First parenthetical is on one or more occasion of harass and the other is charge a course of con--or sorry--engagement in a course of conduct. The misdemeanor statement alleges engaging in a course of conduct. We would be asking for that one.
>
> The Court: Okay. Any objection?
>
> Defense Counsel: No objection, your honor.
>
> The State: For the second parenthetical, harassment or course of conduct, same thing. Misdemeanor statement's alleged course of conduct. We would be asking for that.
>
> Defense Counsel: No objection.

The Court: Okay.

The State: Your Honor, the statute says for misdemeanor stalking--I do have a copy of that if I may approach. And Mr. Hines.

Defense Counsel: Thank you.

The State: In reference to--the statute before A and B says "Any of the following." The State just interprets that as either A or B. Now you have to prove A and B. The instructions aren't really clear on that. The charging document falls into the category of B, so I would ask that A be stricken.

Defense counsel: That's fine, your Honor.

The Court: Okay. So we're going with A. I--

The State: No, we're striking it.

The Court: No, we're striking A. All right.

The State: Striking A and then going with B, which would just be "suffers substantial emotional distress by placing a person in fear of" the statute reads "death, bodily injury, or continued harassment." The charging document does allege continued harassment.

I think if you were to find any of those, that would be sufficient, so I would ask for all three with the "or in there between them. But if we just have to go with one, I would go with continued harassment as that's what's in the charging document.

Defense Counsel: Well, I'm not opposed to that, your Honor.

The Court: All right. So we'll go with death, bodily injury or--

The State: Continued harassment.

The court: Continued. Okay. All right.

The State: And I think the rest is just the same.

The Court: And so we went with course of conduct.

The State: Course of conduct striking A, and B is all three with "or continued harassment."

The Court: So for the -- 4B is it-- okay. So suffer substantial emotional distress. Okay. All right.

The State: Yeah, and then, yeah, engage in a course of conduct at the top of that page as well. I think I missed that but--

The Court: All right. Yes.

The State: And I think that should be it for the stalking charge.

The Court: Okay

Defense counsel: We're fine with that, Your Honor.

This discussion reflects the application of North Carolina Pattern Jury Instruction Crim. § 235.19 to the evidence before the trial court in this case. This pattern instruction includes various alternate constructions in brackets that may be used to apply the disjunctive elements of the charge to the specific facts of the case:

> The defendant has been charged with stalking.
>
> For you to find the defendant guilty of this offense, the State must prove two things beyond a reasonable doubt:
>
> First, that the defendant willfully [on more than one occasion harassed] [engaged in a course of conduct directed at] the victim without legal purpose.
>
> And Second, that the defendant at the time knew or should

have known that the [harassment] [course of conduct] would cause a reasonable person to:

a. [fear for [that person's safety] [the safety of that person's [immediate family] [close personal associates]. One is placed in reasonable fear when a person of reasonable firmness, under the same or similar circumstances, would fear [death] [bodily injury].]

b. [suffer substantial emotional distress by placing the person in fear of [death] [bodily injury] [continued harassment]].

N.C.P.I. Crim § 235.19.

During the charge conference quoted above, the State requested the trial court instruct the jury using the "course of conduct" option, and "emotional distress" as the result of that course of conduct. Defendant's counsel affirmed that he did not object to this implementation of the pattern instructions, and did not propose additional instructions limiting the underlying facts on which the jury could convict to those described in the charging instrument. We must determine if Defendant's level of participation in crafting this jury instruction constitutes invited error. Because the trial court did not discuss with the parties the specific issue of limiting the jury's consideration to the course of conduct alleged in the charging instrument, we conclude that it does not.

In prior cases examining invited error in jury instructions, we have reviewed a broad spectrum of attorney participation in crafting those instructions. At one end of that spectrum, error is clearly invited when the defendant requested the

instruction at issue: in *State v. McPhail*, for example, the defendant specifically requested the trial court read the pattern jury instruction regarding confessions. 329 N.C. 636, 643-44, 406 S.E.2d 591, 596 (1991). Any error stemming from that instruction was invited error and could not be heard on appeal. *Id.*

At the opposite end of the spectrum, an attorney's simple failure to object to proposed instructions does not constitute invited error. In *State v. Harding,* the State argued the defendant was precluded from plain error review because he "failed to object, actively participated in crafting the challenged instruction, and affirmed it was 'fine.'" 258 N.C. App. 306, 311, 813 S.E.2d 254, 259 (2018). In rejecting the State's argument, we noted that a failure to object does not constitute invited error but instead gives rise to plain error review. *Id.* (citing *Hooks*, 353 N.C. at 633, 548 S.E.2d at 505 (2001). While the State argued the defendant participated in crafting the jury instruction at issue, the transcript only reflected participation in the subsection (a) "purpose" element of kidnapping and not the subsection (b) elements elevating the charge to first-degree, which were at issue on appeal. *Id.*; N.C. Gen. Stat. § 14-39.

We have recognized a threshold of participation in crafting jury instructions above the mere failure to object which constitutes invited error, even when the appealing party did not specifically request the instruction and language at issue. For example, the State cites to *State v. Wilkinson,* 344 N.C. 198, 474 S.E.2d 375 (1996). In that case, the defendant faced multiple charges, with the evidence supporting instruction on identical mitigating factors for each charge. 344 N.C. at 234-35, 474

S.E.2d at 395. During the charge conference, the trial court specifically inquired if the defendant objected to the court instructing the jury on the mitigating factors a single time, rather than repeating them for each separate charge: "And there's no reason, particularly, to repeat the mitigating circumstances in the entire charge. But I'll only do it if the defendant consents that way." *Id* at 235, 474 S.E.2d at 396. As the defendant specifically agreed to this manner of instruction, our Supreme Court held any error to be invited, additionally noting that the instructions were not erroneous and resulted in no prejudice to the defendant. *Id*. Also in that case, the defendant submitted a proposed instruction in writing, the trial court substituted a word in the proposed instruction, and the defendant did not object to that change. *Id*. at 213, 474 S.E.2d at 383. The Court held any error in that instruction to likewise be invited by the defendant. *Id*.

In *State v. White*, the defendant requested an instruction on nonstatutory mitigating factors but failed to provide the trial court with proposed language for the requested instruction. 349 N.C. 535, 568-69, 508 S.E.2d 253, 274 (1998). The trial court read out loud its proposed instruction on nonstatutory mitigating factors, and defense counsel specifically agreed to the language. *Id*. Citing *Wilkinson,* our Supreme Court held that any error in that instruction was invited, and the defendant could not raise as an issue on appeal the language used in that instruction. *Id*.

Likewise, when the State requested no instruction be given on a lesser-included offense and the defendant's counsel affirmatively stated no such instruction

was necessary, the Court held any error resulted from the defendant's own conduct. *State v. Williams*, 333 N.C. 719, 728, 430 S.E.2d 888, 893 (1993). And in *State v. Harris* the defendant argued that the trial court erred in the language it used to instruct the jury on a mitigating factor, but he had "agreed at the charge conference that the court would charge on this feature of the case as it did." 338 N.C. 129, 150, 449 S.E.2d 371, 380 (1994). Therefore, any error was invited, though the Court also held there was no error in the trial court's instruction. *Id.* at 129, 449 S.E.2d at 380-81.

As Defendant did not request the instruction at issue in this case, the question before us is whether his participation in the crafting of the jury instruction from the Misdemeanor Stalking pattern instruction forecloses any appeal related to the instruction on that charge. The trial court and counsel effectively worked through the pattern instruction line by line, and Defendant, through counsel, consented to each of the trial court's choices of construction. However, the specific issue of instructing the jury that its conviction could only be based on the course of conduct alleged in the charging instrument did not arise during the charge conference.

This case is similar to our decision in *State v. Chavez,* 270 N.C. App. 748, 842 S.E.2d 128 (2020), *rev'd on other grounds*, 378 N.C. 265, 861 S.E.2d 469 (2021). In *Chavez*, the indictment named only a single co-conspirator in the offense of conspiracy to commit first-degree murder but, at trial, the State provided evidence of two co-conspirators. 270 N.C. App. at 754, 842 S.E.2d at 133. The defendant argued the trial

court erred by failing to limit the jury's consideration to the co-conspirator named in the indictment. *Id.* Counsel for the defendant participated in crafting the instruction during the charge conference, did not object to the proposed instruction on the conspiracy charge, and additionally requested that an instruction on "mere presence" be added to the language. *Id.* at 755, 842 S.E.2d at 134. The trial court provided written copies of the instructions to both parties, the defendant had multiple opportunities to object outside the presence of the jury, and the defendant's counsel indicated to the court that she was satisfied with the instructions. *Id.* at 754-55, 842 S.E.2d at 133-34. Citing *Harding,* we held that the failure to object to the applied pattern instruction did not constitute invited error. *Id.* at 757, 842 S.E.2d at 135 ("As Defendant did not request the conspiracy instruction, but merely consented to it, Defendant did not invite error like the defendant in *Wilkinson*, and is entitled to plain error review like the defendants in *Harding* and *Hardy*.").[1]

As in *Chavez*, Defendant participated in the crafting of the jury instruction on the charge at issue, but on appeal argues the trial court should have added an instruction limiting the basis upon which the jury could convict. Following *Chavez*, Defendant did not invite the error.

This is in accord with the general patterns of our appellate decisions regarding

---

[1] In its review of this Court's decision in *Chavez*, our Supreme Court likewise reviewed the jury instructions for plain error, ultimately holding that the defendant could not show prejudice and reversing the prior decision. 378 N.C. 265, 270, 861 S.E.2d 469, 473 (2021).

invited error in jury instructions. In cases where the defendant participates in crafting the instructions and specifically consents to the instruction as given, he may not argue on appeal that the language or form of the instruction that was given was in error. *See, e.g., Harris,* 338 N.C. at 150, 449 S.E.2d at 380. When a provision is excluded from the instruction and that provision was specifically discussed with the defendant who explicitly consented to its exclusion, likewise no appeal will be heard. *See Williams* 333 N.C. at 728, 430 S.E.2d at 893. However, when a provision is excluded from the instruction and the appealing party did not affirmatively consent to its exclusion but only consented to the instructions as given, even when given "ample opportunity to object," *Hardy*, 353 N.C. at 131, 540 S.E.2d at 342, we cannot say that he invited the alleged error. Accordingly, we review the trial court's instruction for plain error.

B.     *Plain error review*

A defendant may only be convicted of "the particular offense charged in the bill of indictment." *State v. Locklear*, 259 N.C. App. 374, 380, 816 S.E.2d 197, 202 (2018) (citing *State v. Barnett*, 368 N.C. 710, 713, 782 S.E.2d 885, 888 (2016)). It is "error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the [charging instrument]." *State v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980).

Because Defendant did not object to the jury instructions at trial, we review this issue for plain error. "The plain error rule . . . is always to be applied cautiously

and only in the exceptional case[.]" *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir. 1982). "[I]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Id.* at 661, 300 S.E.2d at 378. To show plain error, Defendant must show not only that the trial court erred, but that the error had a probable impact on the jury's finding that he was guilty. *State v. Lawrence*, 365 N.C. 506, 517, 723 S.E.2d 326, 334 (2012).

Here, Defendant argues that, although the Statement of Charges alleges only the placing of milk jugs outside of Parker's home as the course of conduct underlying the stalking charge, the State introduced evidence of at least eight other types of harassing conduct directed toward Parker. As such, Defendant contends, we cannot know whether the jury convicted Defendant based on the course of conduct alleged in the charging instrument or other conduct for which evidence was presented.

"In order for a variance to warrant reversal, the variance must be material," meaning it must "involve an essential element of the crime charged." *State v. Norman,* 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002). A jury instruction that is not specific to the factual basis alleged in the charging document is acceptable so long as there is "no fatal variance between the [charging instrument], the proof presented at trial, and the instructions given to the jury." *State v. Clemmons*, 111 N.C. App. 569, 578, 433 S.E.2d 748, 753 (1993). For example, where evidence of only a single wrongful act is presented to the jury, it is not error for the trial court to fail

to give instructions specific to that act. *See, e.g., State v. Ledwell*, 171 N.C. App. 314, 320, 614 S.E.2d 562, 566-67 (2005).

In this case, evidence of multiple potentially wrongful acts was presented to the jury. For Defendant to show plain error, he must show that, but for the challenged instructions, the jury probably would have reached a different verdict. *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993). For this to be the case, the jury must have rejected the evidence of the milk jugs as satisfying the "course of conduct" element of stalking but accepted evidence of Defendant's other conduct to satisfy this element. There are only two ways the jury could have reached this result: by finding (1) that Defendant did not place the milk jugs in his driveway; or (2) that he did not do so with the requisite mental state: knowledge that placing the milk jugs would cause a reasonable person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment. Neither of these possibilities are probable.

First, the evidence of the act of placement of the milk jugs was overwhelming. In addition to Parker's testimony, Defendant admitted to placing the milk jugs in his driveway and to writing the letters on them. The only conduct he did not concede was specifically turning the milk jugs to face Defendant's window in sequence, and he hypothesized that someone had repositioned them. But he conceded that he wrote the letters used to spell out multiple slurs and provided no explanation for who may have moved the jugs or why. He also engaged in a course of additional conduct that, under

Defendant's argument, was sufficiently egregious that it caused the jury to convict him for stalking. Given the evidence before them, including Defendant's own testimony, it is not probable that the jury found he did not place the milk jugs in the driveway.

Nor is it likely that the jury found he did not place the milk jugs with the requisite intent. Defendant's theory requires that the jury convicted him based on a course of conduct other than the placement of the jugs, necessarily finding that this course of conduct was committed with knowledge that it would cause a reasonable person emotional distress. This would require the jury to conclude that, although Defendant engaged in a course of conduct he knew would cause emotional distress, the placement of milk jugs in his driveway—angled toward Parker's home and spelling out racial and sexual epithets—was coincidental and not a part of that course of conduct. We note as well that the primary focus of the trial was the course of conduct alleged in the charging document: a significant portion of the testimony at trial was related to the milk jugs, and Parker testified that he took out charges in response to their placement. We cannot conclude that the jury found Defendant engaged in some course of conduct that constitutes stalking but that his conduct involving the milk jugs was innocent.

Defendant relies primarily on two cases to support his argument, both of which are distinguishable. In *State v. Taylor,* the trial court failed to instruct the jury on "removal," the theory of kidnapping contained in the indictment, and instead

instructed on "confinement" and "restraint," neither of which were alleged in the indictment. 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980). Unlike in this case, the variance in *Taylor* was fatal because the jury, following the trial court's instructions, could not have convicted under the theory alleged in the indictment. *Id.* In *State v. Ferebee*, 137 N.C. App. 710, 529 S.E.2d 686 (2000), the pattern jury instruction given was facially ambiguous and allowed the jury to convict for conduct the legislature did not intend to criminalize. Additionally, the defendant in that case objected to the instructions at trial and our review was not for plain error. 137 N.C. App. at 713-14, 529 S.E.2d at 688.

The evidence in this case supports a conviction based on the course of conduct alleged in the Statement of Charges, and a different jury instruction would not have produced a different result. Defendant was not prejudiced by the trial court's instructions. *See State v. Tirado*, 358 N.C. 551, 576, 599 S.E.2d 515, 533 (2004) ("[T]he evidence supported both the theory set out in the indictment and the additional theory set out in the trial court's instructions. Accordingly, we conclude . . . that the error in the instructions was not prejudicial."). The trial court did not plainly err.

II. Rule 404(b) evidence

As described above, the State produced evidence of acts committed by Defendant that were not alleged in the charging instrument. Defendant argues that this evidence was admitted under Rule 404(b) of our Rules of Evidence, which allows evidence of other crimes and acts to be admitted, among other purposes, to show

motive and intent. Because Rule 404(b) evidence is admissible only for limited purposes, he argues the trial court erred by failing to provide a limiting instruction to the jury, either at the time the evidence was admitted or during the formal jury charge.

However, as Defendant concedes, the trial court is not required to provide a limiting instruction when no party has requested one. "The admission of evidence which is relevant and competent for a limited purpose will not be held error in the absence of a request by the defendant for a limiting instruction. 'Such an instruction is not required unless *specifically* requested by counsel.' " *State v. Stager*, 329 N.C. 278, 309, 406 S.E.2d 876, 894 (1991) (citing *State v. Chandler*, 324 N.C. 172, 182, 376 S.E.2d 728, 735 (1989). This is in accord with our Rules of Evidence: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." N.C. Gen. Stat. § 8C-1, Rule 105 (emphasis added).

Here, Defendant failed to request a limiting instruction. Defendant did not at trial and does not on appeal challenge the admissibility of the evidence of his conduct. The trial court did not err by failing to give a limiting instruction when no instruction was requested. *State v. Wade*, 155 N.C. App. 1, 18, 573 S.E.2d 643, 654 (2002).

III.  Death and Bodily Injury

Defendant next argues that the trial court plainly erred by instructing the jury

on extraneous theories of guilt not alleged in the charging document. In order to convict a defendant of stalking, the State must show that the defendant (1) harassed another person or (2) engaged in a course of conduct directed at that person. Then it must show that the defendant knew that their actions would cause a reasonable person to either (1) fear for their safety or that of others, or (2) suffer substantial emotional distress by being placed in fear of (a) death, (b) bodily injury, or (c) continued harassment. N.C. Gen. Stat. § 14-277.3A(c).

The charging instrument in this case alleged only that Defendant knew that his course of conduct would place Parker in fear of continued harassment. However, the trial court instructed the jury on all three forms of emotional distress that can support a stalking conviction:

> And second, that the Defendant at the time knew or should have known that the course of conduct would create (sic) a reasonable person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.

Defendant argues that instructing the jury on the fear of death or bodily injury allowed the jury to convict based upon a theory of conduct not alleged in the indictment.

Unlike the instruction at issue above, where the trial court failed to give an instruction that was not discussed at the charge conference, the trial court discussed this instruction and its specific construction with the parties:

> The State: Striking A and then going with B, which would

just be "suffers substantial emotional distress by placing a person in fear of" the statute reads "death, bodily injury, or continued harassment." The charging document does allege continued harassment.

I think if you were to find any of those, that would be sufficient, so I would ask for all three with the "or" in there between them. But if we just have to go with one, I would go with continued harassment as that's what's in the charging document.

Defense Counsel: Well I'm not opposed to that, Your Honor

Defendant, through counsel, specifically and affirmatively consented to this construction of the charge. Accordingly, any error in giving this instruction was invited and cannot be heard on appeal. *See Harris*, 338 N.C. at 150, 449 S.E.2d at 380.

Additionally, Defendant cannot show that he was prejudiced by the trial court's instruction. In order to show prejudice, absent an objection at trial, Defendant must show that it was probable the jury found that he had placed the victim "in fear of death or bodily harm" and that it probably would have found him not guilty if instructed only on "fear of continued harassment."

The evidence at trial related to Defendant's harassing behavior towards Parker, and Parker testified to his fear of continued harassment. Parker did testify that Defendant's behavior caused him to fear for his safety, but this evidence of Defendant's behavior constitutes further evidence of fear of continued harassment. We cannot conclude that the trial court instructing the jury only on continued

harassment "would have tilted the scales in favor of Defendant." *See State v. Gainey*, 355 N.C. 73, 95, 558 S.E.2d 463, 478 (2002) (finding no plain error where kidnapping indictment alleged "confinement" as theory of conviction, trial court instructed on "restraint or removal," and evidence supported all three theories). Defendant was not prejudiced by this instruction.

IV.     Ineffective Assistance of Counsel

Defendant argues that he received ineffective assistance of counsel, in that his counsel failed to object to each of the alleged errors above: (1) by failing to request the trial court instruct the jury to limit its consideration to only the conduct identified in the charging document; (2) by failing to request a limiting instruction as to the 404(b) evidence of the additional conduct; and (3) by failing to object to the jury instruction listing death and bodily injury in addition to continued harassment.

The right to effective counsel stems from the Sixth Amendment to the United States Constitution. In order to show ineffective assistance of counsel, Defendant must first show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The North Carolina Constitution also guarantees effective counsel, but the rights protected and ensuing analysis are identical to the federal standard. *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d

241, 248 (1985); N.C. Const. Art. 1, §§ 19, 23.

"In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal." *State v. Stroud*, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001). In particular, where the alleged deficient performance concerns "potential questions of trial strategy and counsel's impressions, an evidentiary hearing available through a motion for appropriate relief is the procedure to conclusively determine these issues." *Id.* at 556, 557 S.E.2d at 548. Without evidence concerning the decisions made and strategy engaged by counsel, it can be difficult to determine if counsel's performance fell below an objective standard.

However, we need not address whether or not defense counsel's performance was deficient before examining whether or not Defendant was prejudiced by the alleged deficiencies. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 694.

In order to show prejudice in an ineffective assistance of counsel claim, Defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* This "reasonable probability" standard is lower than the "probable impact" standard for plain error, and it is possible to find prejudice in an ineffective assistance claim where there was no plain error. *See State v. Lane,* 271 N.C. App. 307, 311-16, 844 S.E.2d 32, 37-40 (2020). And, unlike when we review trial court decisions for plain

error, we may consider the cumulative effect of counsel's alleged errors. *Id.* Still, Defendant must show that "[t]he likelihood of a different result [is] substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112, 178 L.E. 2d 624, 647 (2011). Defendant does not meet this threshold.

We first consider the cumulative impact of defense counsel's failure to request an instruction limiting the jury's consideration to the course of conduct alleged in the indictment—the placement of the milk jugs—and counsel's failure to request a limiting instruction as to evidence of other conduct. Assuming counsel had properly objected, a limiting instruction had been given as to the evidence of defendant's other conduct, and the jury was instructed it could only convict based on the course of conduct from the charging instrument, we do not hold there is a substantial likelihood that the jury would have found Defendant not guilty. As discussed above, the possibility that the jury convicted Defendant of stalking based on his other behavior but believed his displaying of milk jugs with racial and homophobic slurs to be innocent behavior is remote at best.

Second, the trial court's instruction on fear of death or bodily harm made the jury no more likely to convict than if it had limited its instruction to the fear of continued harassment. We cannot hold that it was likely the jury believed Parker was placed in fear of death or injury but not further harassment. Defendant was not prejudiced by his counsel's allegedly deficient performance.

V.     Sufficiency of evidence

Finally, Defendant argues the trial court erred by denying his motion to dismiss as there was insufficient evidence to support his conviction for Misdemeanor Stalking. Specifically, Defendant contends the evidence of whether he communicated something to Parker using the milk jugs, or what was communicated thereby, is too speculative to sustain a conviction.

We review the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). On review, we determine "whether there is substantial evidence, viewed in the light most favorable to the State, of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Lane*, 163 N.C. App. 495, 499, 594 S.E.2d 107, 110 (2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "The State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *State v. Hill*, 365 N.C. 273, 275, 715 S.E.2d 841, 842-43 (2011) (citing *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).

To survive a motion to dismiss, the State was required to provide substantial evidence of each element of Misdemeanor Stalking. As applied to this case, those elements are that Defendant (1) willfully engaged (2) in a course of conduct (3) directed at Parker (4) without legal purpose (5) which Defendant knew or should have

known would cause a reasonable person to suffer substantial emotional distress (6) by placing that person in fear of continued harassment. N.C. Gen. Stat. § 14-277.3A(c). In this case, a "course of conduct" consists of two or more acts by which Defendant threatened or communicated with Parker. N.C. Gen. Stat. § 14-277.3A(b)(1)

Taken in the light most favorable to the State, the evidence showed Defendant placed milk jugs in his driveway with handwritten letters directed towards Parker's residence. Over the course of multiple days, these jugs spelled out "N" "I" "G" "G" "A" and "H" "O" "M" "O," as well as "Q" "N" and "F" "N," which Parker interpreted to be abbreviations for further slurs. Defendant admitted to labeling the milk jugs and placing them in his driveway, leaving only the question of whether he willfully engaged in this course of conduct, and whether he knew or should have known it would cause a reasonable person substantial emotional distress.

"It is well-established that intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Wooten*, 206 N.C. App. 494, 501, 696 S.E.2d 570, 576 (2010) (citations omitted). Taking the evidence of Defendant's course of conduct, combined with evidence of his other actions toward Parker, including calling him a racial slur, banging on the adjoining wall, and revving his vehicle and disturbing Parker's property at night, it was reasonable for the jury to conclude that Defendant's actions were willful and to find him guilty of Misdemeanor Stalking. The trial court did not

err by denying Defendant's motion to dismiss.

Thus, in sum, the trial court properly submitted the case to the jury on the evidence presented and—to the extent error was not invited—did not plainly err in its jury instructions or in failing to provide additional limiting instructions, and trial counsel's allegedly deficient performance did not prejudice Defendant. Therefore, there is no reversible error in this case. Consequently, the trial court properly entered judgment upon the jury verdict.

## **Conclusion**

Accordingly, for the foregoing reasons, there was no error at trial and we affirm the Judgment.

NO ERROR.

Judges ZACHARY and THOMPSON concur.